2017 50297 in the matter of Manuel Palomero Lopez and Doris Pankio Lopez, you may proceed. Good morning. May it please the court. My name is Todd Molase and I represent the appellants, the debtors in the underlying Chapter 13 case. The issue presented here is whether the undisbursed funds held by a Chapter 13 trustee when the Chapter 13 case is dismissed must be returned to the debtors or paid to the creditors. The undisbursed funds in question are proceeds from the post-petition sale of a pre-petition asset, namely the debtors' homestead. The bankruptcy court ordered that those proceeds lost their exemption because they were not re-vested into another homestead within six months and, therefore, that they became non-exempt property. At that point, we have no issue with it. So that's the case. I mean, the exemption's gone. That is correct. And this issue, I'm aware of the Frost opinion that dealt with that issue, and that issue does not come into play in this case. Is it thought that the Frost opinion is still a problem that's causing and had to be – is there still an outcry about that? There is tension, I would say, and there is some difficulty in applying Frost to certain cases, but it is still good law in this case. And it doesn't need to be dealt with in this case either way. It does not. The bankruptcy court, because they were property estate, ordered that those funds be paid to the trustee to be held until further determination of the court. The debtors then filed – both the debtor and the trustee filed competing motions to modify the plan, to pay those proceeds into the plan. The debtors moved to pay all of the proceeds into the plan, but for some proceeds that were reasonable and necessary to pay for eye surgery. The trustee, on the other hand, moved to ask the court to order that all the proceeds be paid into the plan. The bankruptcy court, during one of the hearings, told the debtors that if they wanted to keep the money, they could dismiss the case. But if they dismiss the case, they wouldn't get a discharge. That's the tradeoff, is what the bankruptcy court said. Why isn't that – I mean, if the funds go back to the debtor here, then there's going to be a feeding frenzy, right, or not? Well, yes, yes. It's not like they're going to take them home and buy a nice house or do something, I mean, or go to Neiman's. I mean, all that means is that they're not going to have a discharge and they're not going to have the protection of the Bankruptcy Act. So there will be a feeding frenzy with whatever creditors have not been paid, right? That is correct, Judge. Am I missing something? No, you're not, Judge. And the purpose of – the stated legislative purpose of Section 349 is to undo the bankruptcy and to unwind it. And paying the creditors is not an unwinding task. Refunding the debtors the property of the estate, whether that property is in the hands of the trustee or whether it's in the hands of the debtor, refunding that property is the purpose of Section 349. And after the monies are refunded, then the creditors are left with their state court remedies. They're not prejudiced. They still have the right to pursue any claims. Their cause of actions are still active, even if the limitation is told during the bankruptcy. The Bankruptcy Code provides protection for creditors when a Chapter 13 case is dismissed, and that is the limitations are not told until 30 days after the dismissal. So the creditors are not prejudiced in any way. And the Supreme Court's ruling in Harris v. Vigeland is very significant to this case. In that opinion, that court reversed this court. This court had held a very similar issue. The issue there was what happens to proceeds or funds, undistributed funds, that the trustee is holding when the case is converted to a Chapter 7. And the Supreme Court said that those under Section 348 go back to the debtor. And there are significant pronouncements in that court, even though that dealt with, that holding dealt with the case that's converted and not a case that's dismissed. Whether the case ends in conversion or dismissed should not matter. And the Court said significantly that once the case is converted, the Chapter 13 plan is no longer in effect. Here, when the case is dismissed, the Chapter 13 plan is no longer in effect. This court has also acknowledged that, too, in Vigeland v. Harris. However, the court here, this court, said that you don't entirely unwind the confirmation order, that the confirmation order is still in effect as to the money that was voluntarily paid to the trustee under the terms of the plan. Here, we have proceeds that were not part of the plan payments. The bankruptcy plan did not call for these proceeds to be paid into the plan. When the debtor proposed the plan, they proposed to pay $1,100 a month to the trustee for 60 months. These proceeds became property of the estate. The debtors proposed to pay a good portion of those into the plan, but the modification was denied after or at the same time the case was dismissed. Harris also pointed out that the creditors do not have a vested interest in the proceeds until they are actually paid to the creditors. This Court in Vigeland v. Harris acknowledged that as well. Also the creditors aren't harmed here because they still have their rights that they had before the voluntary proceeding was ever filed. That is correct. Who is harmed? Is the trustee harmed because they don't get their cut? Who is hurt by this? Well, the trustee would not get a commission, I don't believe, if they refund the money to the debtor. The debtor is harmed if they don't get to keep the money, because if the purpose is to unwind the proceeds or unwind the bankruptcy, they had their homestead before the bankruptcy was filed. And now they have proceeds. They'll have less than what they had before. That is correct. And it was actually suggested by the bankruptcy court. That is correct. After hearing at least two hearings at that time, I believe the bankruptcy court gave them that option. And up until that point, the debtors were still trying to stay in the case. They had made, I think they were 52 or 53 months into the case. They had made planned payments. They were behind on some, but they struggled. These debtors did not have much money. The primary income that they had was $3,500 of business income from the debtor. He lost his job soon after the bankruptcy was filed, and they no longer had that income for the duration of the case. They first decided to sell their car. Then they decided to sell their home. And they sold their home not for cash that they got. It was a wrap note where the monthly payment that they received under the wrap note was just enough to pay their plan payment and their mortgage payment that they had to make and, I think, a little bit to pay for reasonable necessary expenses so they could stay into the plan. Here we are in month 55, and then the balloon note came to an end, or it ballooned, and now we have the proceeds and the debtor sought permission to sell the home, and the bankruptcy court approved the sale of the home. Can you address the district courts for cause determination? Yes. The district court followed three cases or relied on three cases in support of its opinion, and those three cases were Dearden, Hufford, and Torres. And the district court in those cases, the district court said Section 1326 determines the outcome because Section 349 does not apply. And it said even if it did apply, then there is cause to determine whether funds should be alternately vested. And I contend or we contend that the Harris opinion significantly narrows the court's ability to determine cause, and that's because there's no longer a planning effect. So let's assume there is cause for alternate vesting after the case comes to an end and a dismissal. Who's the trustee going to pay? How's the trustee going to pay it? How much are they going to pay the credit? Is the trustee going to pay the creditors? You cannot pay under the terms of the plan, according to Harris v. Feigler. The plan is no longer in effect. Also, Harris pronounced that Chapter 13 provisions are no longer in effect. Section 349 is. 348 was. Therefore, Section 349 should be. But all the provisions in Chapter 13 of the Bankruptcy Code no longer have sway, end quote, from the Harris opinion. So what, I mean, part of my problem is I don't understand why we're here. But anyway, they've lost their homestead exemption because they didn't reinvest it. So the money's out from under the homestead exemption. It goes back to them. There's a feeding frenzy. The creditors who haven't been paid, what's left by way of unpaid creditors? I don't recall the exact amount. I believe that the amount of unsecured debt that is owed exceeds the amount of the proceeds. Maybe the trustee can. It's in the record, I think, but I apologize. I don't have that. So it's not, in any event, going to help them particularly. No, they're back in the same position that they were. They do have these funds, and now these funds are not protected, and the creditors, if they're aggressive enough, can reach them. I don't see how they could protect those funds. They certainly can't go buy an asset or try to shield them right before a lawsuit is filed or when a lawsuit is filed. So they receive no benefit. So what are you hoping to get from us today? We're asking that this court reverse the district court finding of cause and conclude. The district court concluded that the bankruptcy court concluded that 349 does not apply. We believe it does under Harris and the plain language of the statute. And the district court said that the proceeds should go to the creditors. They did, they did. But the district court said that, according to the bankruptcy code, the proceeds vested in no one. And I think that's. They would just sit there? There's no ongoing bankruptcy proceeding because they've withdrawn their voluntary. I don't understand how they would get dispersed if that was the case. I don't either, and that's the purpose of this appeal. The trustee, even if cause is found to order alternate vesting, there's no way to disperse those funds. The trustee has no power. Her power, the Chapter 13 trustees. It ended. They did. And her powers emanate from the Chapter 13 plan and the bankruptcy, Chapter 13 provisions of the bankruptcy code. She's allowed to, under the bankruptcy code, collect payments made according to the plan and disperse those payments to creditors. That's it. Also significant, to the extent the district court is allowed to order otherwise, I would argue that the bankruptcy court did order otherwise. The confirmation order says when the plan, if the plan is dismissed, the property of the estate must be returned to the, should be returned to the debtor. There is an order in effect. I'm sorry? There is an order in effect. There is an order in effect already. So the trustee needs to explain if the construction that she, the rule that she urges this court to follow is that property of the estate, when the case is dismissed, maybe she may take that money, if cause is found, may take that money and pay creditors. She needs to explain if that rule is going to apply to all property of the estate or only property of the estate that she possesses that are in her hands at the time the case is converted. Thank you. We have your argument. Thank you. May it please the court. Vanessa Guerrero on behalf of the Chapter 13 trustee and the appellee in this case, Mary Catherine Vigeland. Section 349 of the code is clear and unambiguous. The intent of this provision is to undo the bankruptcy case as far as possible. Precise restoration, however, does not necessarily occur because Section 349 provides that a court can order otherwise. The bankruptcy court in this case did not act under principles of law when it ordered the trustee to deliver the sales proceeds to the debtors. The bankruptcy court made no detailed findings of facts nor conclusions of law but simply stated that it found no cause to convert the case to Chapter 7 nor for an involuntary modification of the plan. There was no rational basis for this decision, and it disregarded Texas state law and Fifth Circuit precedent regarding the status of homestead sales proceeds, which became non-exempt property of the estate long before the debtors disclosed the existence of the proceeds and long before they moved to dismiss this case. By ordering a return of the funds to the debtors, the bankruptcy court essentially is expanding the debtors' rights under state law that would not be afforded to them had there been no bankruptcy in place. You guys had asked earlier whether or not the creditors would be harmed, and they would be harmed. It would require the creditors to run to the courthouse within a certain timeframe. That's what's going to happen, isn't it? Correct, because statute of limitations for most of these creditors has already run. The bankruptcy code only provides for a 30-day period in which these creditors can theoretically go to the courthouse, file a lawsuit, obtain a judgment, and execute a garnishment. All the while, the debtors in this case did not disclose the existence of the proceeds. But it's over. So how can – what happens to the – how does the trustee have any authority to disperse the funds? Well, Your Honor, the 349 is a flexible statute and is to be interpreted broadly. So here the court can order in and of itself the delivery of proceeds to somebody other than the debtors. In this case, they found cause to do so. But who were they delivered to? The court found that they were not vested in anyone, and so who did the district court give the money to? Well, the district court found it did not vest in anyone as it was analyzing 349b-3, which spoke of the type of property that could revest in the debtor at the dismissal of a case. In this case, it's impossible to return the case to status quo, which would be the intent of 349, because at the filing, all that existed was the homestead. But at dismissal, there were proceeds. Do you disagree with the opposing counsel that – whether Frost is implicated? Frost is absolutely implicated. Because opposing counsel says Frost doesn't matter, that he's willing to live with Frost because it doesn't matter here. And you're saying, do you need Frost?  In this case, had debtors disclosed in accordance with Fifth Circuit precedent the post-petition acquisition of the proceeds, these proceeds should have been delivered to the creditors three years ago. It wasn't until three years after the fact that they sold the home that they made the disclosure, and it wasn't until such point that it was a refinance of the balloon note that they filed the notice, and it was only because the title company forced the debtors to file a motion with the court in order to proceed with the closing. Okay, I'm still confused about what happens to the money under your theory. What, is the trustee going to continue to administer these funds, to distribute them to the different creditors? The trustee would just deliver the proceeds to the unsecured creditors who would be entitled to the proceeds. They didn't decide how to distribute them to the indisclosed creditors until they ran out? The unsecured creditors? Yeah, it would just be paid on a pro rata basis in accordance with the provisions of the code. Even though the trustee no longer has authority because the voluntary bankruptcy has ceased? Well, that brings me to the next point, Your Honor. There is some debate as to whether or not Harris v. Vigelin is applicable in dismissed cases. Those courts that do hold Harris is applicable completely disregard the nature of the dispute in Harris because Harris dealt with conversion as opposed to dismissal and dealt with post-petition wages. Here we're dealing with proceeds from the sale of a homestead whose exemption in the proceeds was forfeited the minute the debtors took a note receivable. And then critical here is that Harris v. Vigelin did not interpret Section 349 of the code. The effect of conversion is guided by Section 348 of the code, whereas dismissal is guided and governed by Section 349. In concluding that the wages in the possession of the trustee in Harris v. Vigelin, that they were to be returned to the debtor, the Supreme Court found support in its conclusion in two particular provisions of 348, one being Section 348F1, where property of the estate in a converted Chapter 7 estate does not include post-petition wages, the other being Section 348E, where the trustee's services are terminated at conversion. No such analogous provisions exist within Section 349 of the code. So your position is that the trustee still has official position? Yes, Your Honor. And the majority of the courts that have considered the impact of Harris v. Vigelin within a dismissed context have agreed that Harris is not applicable. So what provision of the code does the trustee operate under now to send this money out to the creditors? 349, Your Honor. And so? 349, which would allow the court to order that funds be dispersed to someone other than the debtor. 349 is designed to fashion a disposition to alter this presumptive revesting of property back in the debtor at dismissal. And you're saying the district court can do that? Yes. And the district court can do that because the bankruptcy court in this case made no factual findings or conclusions of law. The bankruptcy court determined that there was not cause, didn't it? It just simply stated that it found no cause for an involuntary modification of the plan or conversion to Chapter 7. Right. But it's finding no cause. So do they have a disagreement? Well, there is a question related to what was the underlying basis for that decision. On appeal, the district court, in looking at the record, clearly made a decision that there was no rational basis considering the fact that the debtors in this case failed to disclose the existence of the proceeds for more than 3 years while keeping creditors at bay. And then, again, under the Fifth Circuit precedent, debtors have an ongoing duty to disclose postpetition assets. And this duty has been decided by this court with decisions that date back to 1990. The debtors in this case completely disregarded that requirement. In addition, the debtors in this case completely disregarded the requirement to seek court authority to even sell the property in the first place. And that's your cause? That's the cause you say supported the district court's decision? It's just correct, Your Honor. And that's just one of the factors of cause. There were multiple levels of cause here. The failure to disclose, the failure to seek court authority, the failure to reinvest the proceeds within 6 months, which thereby forfeited the exemptions in the proceeds and made them subject to distribution to creditors because they were to satisfy claims of the estate. In accordance with this court's decisions in Frost, in In re. England, in In re. Zipman, these decisions have all been decided by the appellee in her brief. Counsel, I'm still very confused why you don't believe the Supreme Court's case that says estate property does not become property of the creditors until it is distributed to them is applicable here. These homestead proceeds did not get distributed to the creditors, and then it was dismissed. So they never belonged to the creditors. The creditors in the bankruptcy, they may belong to the creditors in the real world. But why, how do you not, what do you do with the Supreme Court holding that, that estate property is not property of the creditors? That's where we can go back to Section 349 of the Code, which allows for determination of the facts for cause, for many reasons, whether it's by operation of law because of the bad faith acts of the debtor, because there's a statutory or equitable basis to deliver proceeds to someone other than the debtor. And in this case, we happen to have Texas homestead laws. There's a piece of the pie that is subject to distribution to creditors on an equitable basis. And 349 of the Code actually provides the creditors and the bankruptcy court and the district court on appeal that flexibility to make that determination. To make what determination? The determination that the proceeds can be delivered to someone other than the debtor. In this case, the district court found that 349b3 with respect to revesting property could not take place and was inapplicable because the proceeds didn't exist at the commencement of the case. And that's the literal reading of 349b3. So if it didn't exist in the debtor, how can you revest something in them at dismissal if it wasn't vested with them at the commencement of the case? But the homestead did. The homestead was. Correct. But this court's decision in Inouye-Frost and then clarified in Inouye-Hawk, which was rendered a few months ago, once the character of the homestead is changed, you have a new property interest by virtue of Section 1306 of the Code. So even if it stemmed from the proceeds, I mean from the homestead, even hypothetically speaking, let's say these proceeds could revest in the debtor at dismissal. It doesn't change the fact that 349 allows for an alternate distribution and can overcome that presumption by finding that cause exists to order otherwise. In this case, I think it's really important to know that the debtors were required to file motions with the court and to disclose the existence of the proceeds, and they failed to do so for a period of three years. And then again— And in a perfect world, what should have happened? In the perfect world, they should have filed a motion pursuant to Section 1303 of the Code, which requires a court to approve a sale of property of the estate. Federal Rules Bankruptcy Procedure 6004 requires a notice of the sale. It also, in Subsection C, requires that a sale of property be made by motion to notice to creditors and any other interested parties. The local rule in this district requires a motion to indicate whether the trustee consented or did not consent to the proposed sale. That did not occur. And notwithstanding the requirement of the debtors to seek court authority to do so, they had this ongoing obligation to disclose the proceeds in this case. And they had multiple opportunities to fully and freely disclose, yet they failed to do so. So what—suppose they had disclosed and said, we sold the house. I mean, we have the house—we have the proceeds now. Then what would have happened? Well, based on the frost, which was rendered in 2014, we would have argued that the proceeds were not exempt and would have to be distributed to creditors. Or in exchange for retention of some of the proceeds, the debtors could have paid a monthly sum to the trustee over the remaining term of the plan equivalent to the value of the proceeds. Have we already held that we can't distribute funds once the plan is gone via the trustee through the plan? Haven't we held that already in the Wells Fargo Operage? In the Operage? Yes. Your Honor, in Operage, that decision did not deal with 349 of the Code specifically, and it dealt more—and it didn't deal with dismissal of a case. Now, it did particularly say that, yes, that dismissal would negate the plan. Right. The plan is no longer in existence. But, Your Honor, we do not need the plan in order to distribute the proceeds to the creditors in this case. What authority gives a trustee to distribute funds other than through a plan? What case holds that or statute says that? Section 349. It says a trustee can deliver explicitly. Are you just saying—unless otherwise, that whole little otherwise clause. Case law would support that the court can, for cause, distribute the proceeds. Not the court distribute. I'm talking about the trustee. The trustee would distribute. Correct. What case holds that the trustee can distribute pursuant to—I guess it's like the plan terms, because you said it was the pro rata share, and how would you determine that? What court says that? Other than the court, the district court could say, I'm for cause, I'm sending the money here. But that's a different thing than the district court giving it to the trustee and saying, here, you distribute it to the creditors. Well, and the district court remanded the decision to enter—for the bankruptcy court to enter an order so that the trustee could then distribute to the creditors. And the creditors that would be entitled to the proceeds in this case, because it is a non-exempt asset of the estate, would be the unsecured creditors. So the unsecured creditors that would be paid would be paid in accordance with the bankruptcy code related to priority scheme, and it would be the unsecureds in this case and those creditors who have allowed claims. Okay. Tell me what case says that the trustee has that authority. Well, there are many cases, Your Honor, that say that the court can order that the funds be delivered to someone other than the debtor. That's not the question I'm asking, that the court can allow the trustee, not through a plan, but just sort of in the air through an order to deliver funds to people who used to be in a plan. Okay. I understand the question, Your Honor, and I do not have a case that I can cite to for that. Thank you. So also, the plan, in effect, froze a group of creditors at a point in time, right? Yes. Because there is— So there can be creditors since then? In theory, yes, there could be creditors if the debtors had acquired— Usually it's not just theory. I mean, there are other creditors. There are. Now, the debtors would not be required—they're not allowed to incur additional post-petition liabilities. Yeah, but they do. I mean, they live. They continue to incur liabilities. So there's—the group of creditors here is not a possible claimant to this money. It's not simply the group that took under the 13 plan, right? Well, that would be the only party in which the trustee could disburse funds to. There you go. So what the trustee's going to do is we're going to give them to these Chapter 13 people, even though the Chapter 13 plan is kaput. We're going to give it to the Chapter 13 creditors, and anybody else that's a creditor that's arisen before or since, they're just out of luck. Well, and the trustee would have no knowledge of any other creditors that would be— Well, that's part of the problem. But that burden lies with the debtors to then file motions to allow those claims. So we have to presume that there were no additional creditors because the debtors didn't take any action. It hasn't been provided for. I mean, the possible universe of creditors is not simply the people who took under the plan. If the money just goes back to the debtors, okay, then, as I say, the creditors who didn't get fully paid under the plan, they'll be there. The creditors who may have arisen since then, they'll be there. It'll be the universe of creditors before and now who will go after that money, and no discharge, right? It's not the same group of creditors in theory. In theory. Yeah. Well, in the world of Chapter 13 debtors, it's not just in theory. You know, probably not the same creditors. Some are the same. Probably the light company is still there. Or every time she goes to the doctor, unless she pays in full for a doctor's visit, the doctor becomes a creditor. Yeah. Yes, and there are provisions of the Bankruptcy Code which permit the debtor to incorporate those obligations into a plan for distribution with the other pool of creditors. But the bankruptcy is over. They're not going to be bringing stuff to the trustee to be included in a plan because there is no longer a plan. And no longer a court to do it. Well, the court has the jurisdiction to enter the order that the fines be distributed. Yeah. And specifically to the unsecured creditors in this case. The court can fashion an order pursuant to 349. What about non-exempt estate property that the trustee is not holding? If there was a car or a business equipment, I'm referring to the arguments of your opposing counsel, would you be arguing the same? If there were non-exempt cars or business equipment that had not been disclosed for some time. And so I'm just trying to figure out how far does this reach to allow the trustee to continue to distribute and be resurrected in this process? Lab? Go? Would you be making this about insurance proceeds that weren't disclosed? Yes. Okay. Would you be making this funds in the form of overpayment or planned payments? Yes. And, in fact, the trustee has. The trustee has requested the bankruptcy court, with respect to any funds that may be in her possession, to deliver those funds for a finding of costs. It would even include post-position wages. But those don't belong to the trustee. Overpayments don't belong according to the. But it could as additional disposable income. If there's any. What am I missing? The case is over, right? Yes. The case is over. But I would remind the court that I know what Oparaji said with respect to negating the plan, but specifically I must point the court out to 349B2, which specifically identifies those orders that are vacated. And those orders that are vacated at dismissal are limited to the Chapter 5 type orders, such as 522I, 542, 550, or 533. There's no mention that dismissal within 349B3 vacates a confirmation order that was created under 1325. Okay. I think we have your argument. Thank you, Counsel. Thank you, Your Honors. The Chapter 13 trustee does need a plan in order to pay creditors. She also needs the authority under Chapter 13 provisions of the Bankruptcy Code. She has neither. If the proceeds are ordered, as the District Court said, to be determined, the distribution of those proceeds to be determined by the Bankruptcy Court on remand, how will the Bankruptcy Court know who to pay and how much to pay? The plan is not in effect, so now it's up to the Bankruptcy Court. Will the Bankruptcy Court, as some cases have suggested, could happen if this happened? Could the Bankruptcy Court then set notice to all the creditors and allow them opportunity to file motions and to make their claim as to which creditors should be paid and how much should be paid? That makes no sense. The purpose of 349 is to unwind the Bankruptcy Code. The Chapter 13 trustee is really no longer the Chapter 13 trustee. She's the former Chapter 13 trustee. A debtor has property, non-exempt property, and enters a Chapter 13, and for whatever reason, the Chapter 13 does not work out. As the Supreme Court noted in Harris v. Vigeland, two of three Chapter 13 bankruptcies end in failure. If the principal risk of failure in a Chapter 13 should be you don't get a discharge, it should not be that you lose property, that you lose property that you had before the case, or you lose property that you acquired after the case was filed, especially proceeds or property that was not provided for under the plan. I have no further argument unless the Court has questions. What if during the course of the plan, you always get this question in one of these cases, you know, grandmother dies, nice little nest egg. So there's, you know, assets that have been acquired after the plan. They all go back. The case is dismissed. It all goes back. What happens in a 13 plan if there's suddenly, you know, a gift or a disposition of some kind? If there is a gift or an inheritance, there are provisions in the Bankruptcy Code for an inheritance, but basically the property becomes property of the bankruptcy estate unless there's some exception. So the debtor has the property of the estate, and the debtor would need to then modify the plan to show that the debtor is going to pay that property of the estate into the plan, or the trustee needs to modify the plan. Right, but in this case, the trustee has no longer got benefit of, you know, any standing as trustee. That is correct. Also an important note, if the debtor had elected to file Chapter 7 instead of Chapter 13, these sales proceeds would not be reachable by the unsecured creditors. Those debts would have been discharged. This Court's recent opinion in Hawk that dealt with IRA proceeds, very similar to the Frost opinion. Frost applies in the Chapter 13. Hawk says Frost does not apply in the Chapter 7. Also, had the debtors here elected just to give up and convert this case to a Chapter 7, the Chapter 7 creditors would have, the Chapter 7 estate would have no entitlement to these proceeds, and that's because in a converted case, property estate reverts back only to property that existed pre-petition. So in the hypothetical with the nest egg that comes into being, so the debtor can get the plan modified so that the creditors can all be paid off and they can fulfill the plan, or else couldn't the debtor say, I'm willing to take my chances, I've got all this money now, and so I want to go home and goodbye everybody. That is correct. And that's their sole prerogative. That is correct. Chapter 13 is entirely voluntary. People file Chapter 13 because they want to get a discharge. That's the goal. If they're willing to give up their discharge to allow them to keep certain property, as the case here where they need that property to live on, Chapter 13 shouldn't be a trap door. Thank you, Counsel. Thank you.